UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

WAYNE GASKIN,

                              Petitioner

                                                          DECISION AND ORDER

-vs-

                                                          00-CR-6148 CJS

UNITED STATES OF AMERICA,

                              Respondent

_____

APPEARANCES

For Petitioner:          Wayne Gaskin, *Pro se*
                         F.C.I. Fort Dix
                         P.O. Box 38
                         Fort Dix, New Jersey 08640

For Respondent:          Bret A. Puscheck, Esq.
                         Assistant United States Attorney
                         100 State Street, Room 620
                         Rochester, New York 14614

INTRODUCTION

Now before the Court is the pro se petitioner's application to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the application is granted in part and denied in part.

28 U.S.C. § 2255

Section 2255 provides, in relevant part, as follows:

A prisoner in custody under sentence of a court established by Act of

1

> Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.   The Court may dismiss a section 2255 petition without conducting a hearing if the petition and the record "conclusively show" that petitioner is not entitled to relief. 28 U.S.C. § 2255.   In other cases, "[a] district court has a wide variety of tools available to it in developing the record during habeas proceedings." *Pham v. United States*, 317 F.3d 178,180 (2d Cir. 2003).   Specifically,

> [i]t is within the district court's discretion to determine whether a hearing is warranted.   Among the wealth of materials available to the district court at its direction are the trial record, letters, documents, exhibits, affidavits and written interrogatories.   After expanding the record, the district court then decides if an evidentiary hearing also is required.   Our precedent disapproves of summary dismissal of petitions where factual issues exist, but it permits a 'middle road' of deciding disputed facts on the basis of written submissions.

*Id*. at 184 (citations omitted).   In this case, the Court has taken such a middle road, and has obtained affidavits from the prosecutor and defense counsel (Docket Nos. [#147][#148]), in addition to those submitted by Petitioner (Docket Nos. [#135][#138]).

## BACKGROUND

The facts of this case were set forth in exhaustive detail in a thirty-two page decision of the United States Court of Appeals for the Second Circuit, and need not be repeated here. *See, U.S. v. Gaskin*, 364 F.3d 438 (2d Cir. 2004), *cert. denied*, 544

U.S. 990, 125 S.Ct. 1878 (2005).   For purposes of the instant application, it is sufficient to note only the following facts.

On November 21, 2000, a federal grand jury in the Western District of New York returned an eight-count Indictment against Petitioner, Wayne Gaskin (hereinafter "Gaskin") and two co-defendants. Count One charged conspiracy to possess with intent to distribute, and to distribute, 100 kilograms or more of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(B). Count Two charged possession with intent to distribute and distribution of 100 kilograms or more of marijuana in violation of 21 U.S.C. §841(a)(1). Counts Three, Four, Five and Six charged possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1).   Count Seven charged Gaskin with unlawfully carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Count Eight charged the forfeiture of approximately $20,000.

As early as December 8, 2000, when a detention hearing was held, Petitioner was advised that in connection with the drug trafficking charges, he faced a maximum sentence of forty years in prison, and that if convicted of possessing a firearm in violation of 18 U.S.C. § 924(c), he would also receive a mandatory, consecutive five-year sentence of imprisonment.   In Petitioner's presence the government estimated that if he were convicted of the drug and weapons charges, his overall sentence would likely be in the range of thirteen to fifteen years, and that the drug charges alone could result in a sentence of at least eight to ten years:

3

MR. RODRIGUEZ [Assistant United States Attorney]: Now, we are looking at 100 to 400 kilos of marijuana. Under the guidelines Judge, I calculate that he starts off at offense level 26, Mr. Gaskin does. On top of that I would submit that you would add 4 points for being a supervisor in criminal activity involving five or more persons. That brings him to level 30. Even if the Defendant is category one, at level 30 category one, he is looking at 97 to 121 months. . . . In addition to that he is looking at a 5 year mandatory consecutive under 924(c).

* * *

THE COURT: Mr. Rodriguez has represented that in terms of the sentence that Mr. Gaskin is facing, he is facing now a 40 year maximum sentence on the marijuana possession statutorily. He is facing according to Mr. Rodriguez between, under the guidelines, you anticipate that he is facing – what guideline range did you give me?

MR. RODRIGUEZ: Judge, for Mr. Gaskin 97 to 121 months.

THE COURT: Which translates to what in years?

* * *

MR. ROTHENBERG: 8 to 10 years.

MR. RODRIGUEZ: 8 to 10, Judge.

THE COURT: 5 year minimum if convicted of the gun charge.

MR. RODRIGUEZ: That's correct.

(Detention Hearing Transcript at 36, 38-39).[1]

During the period leading up to the trial in this case, the prosecution and defense had some plea negotiations, and Petitioner was aware of them.[2] The only plea offer

---

[1] Such preliminary estimate was made in the context of a detention hearing during a discussion of factors concerning Petitioner's incentive to flee, and did not rule out the possibility that Petitioner could receive additional sentencing enhancements.

[2] *See*, Suppression Hearing Transcript at 3: "MR. RODRIGUEZ: . . . The Court . . . asked counsel to explore the possibility of any resolution. It is unlikely that the matter is to be resolved."); (*see also*, Transcript of Oral Decision on Pretrial Motions at 25-26: "THE COURT: I don't see that we have much choice other than to begin it [the trial] on that day . . . unless, of course, there's a chance to resolve this, which I assume there's not. MR. ROTHENBERG: I don't want to say there's

conveyed to defense counsel was an offer to allow Petitioner to plead guilty to the

drug counts in exchange for the government dropping the gun count, with no mention

of a possible sentence.  Regarding such offer, Defense counsel, in an affidavit dated

August 5, 2008, states:

> This case was tried in the fall of 2001.  I have a distinct recollection of the morning of September 11, 2001, when the trial was interrupted by the terrorist attack on the World Trade Center, and the Pentagon.
>
> However, although I have a distinct memory of certain of the events that happened during the trial, I have a much vaguer recollection of many of the pretrial events.
>
> It is my general recollection that the government's standing plea offer in Mr. Gaskin's case was to drop the gun count if Mr. Gaskin would plead to the drug charges.  I have notes of a telephone conversation with AUSA Rodriguez on April 2 (presumably 2001), during which this plea proposal was conveyed to me.
>
> I also have notes of various guideline calculations taking into account the gun count, excluding the gun count, and varying the quantity of marijuana.
>
> I have no specific recollection of discussing this plea proposal with Mr. Gaskin.
>
> However, I have notes dated April 3 (again, presumably 2001), which reflect a conference with Mr. Gaskin, and some general considerations with respect to sentencing.
>
> I no longer have my time sheets from 2001.  I have reviewed my hard-copy calendars from the years 2000 and 2001, and cannot determine where or when I met with Mr. Gaskin on April 3.
>
> I do not specifically recall the conversation that is reflected in my notes.  I can state that it would have been my usual practice to discuss a plea

---

no chance.  We've had little success to date, but I don't want to say there's no chance."

offer with my client in any matter of the [sic] seriousness.

I have further notes from a conference with Mr. Gaskin on June 29 (again, presumably 2001). According to my notes, I once again discussed [a] possible plea proposal with Mr. Gaskin on that date.

However, I have no specific recollection of the conference or conversation on June 29, 2001.

(Rothenberg Affidavit). The government also has only a vague recollection of plea discussions in this case, but agrees with defense counsel. As to that the government states:

Notes in the file seem to support Mr. Rothenberg's recollection as contained in his affidavit dated August 5, 2008, that there was a telephone conversation on April 2, 2001, during which he and AUSA Rodriguez discussed a plea. AUSA Rodriguez has no independent recollection of the substance of the conversation, however.

AUSA Rodriguez recalls that at the last hearing before the Court prior to trial, during which a trial date was set, Judge Siragusa inquired about the prospects of a plea. He further recalls that Mr. Rothenberg stated something to the effect that it "looks like we were [are] going to have to try the case," which AUSA Rodriguez understood to mean that the prior plea proposal was unacceptable.

AUSA Rodriguez does not recall whether Mr. Rothenberg called him beforehand to specifically reject the plea offer, nor does he recall Mr. Rothenberg's reaction during the conversation with him in which AUSA Rodriguez proposed the plea.

(Affidavit of Bret A. Puscheck AUSA).

On September 4, 2001, a jury trial commenced before the Court. At trial, one of the prosecution witnesses was Bonnie Gahr ("Gahr"), who, along with her then-boyfriend (and later her husband) Ron Ruffin ("Ruffin"), had been drug couriers for Petitioner. In April 1999, Ruffin and Gahr were transporting approximately 285

6

pounds of marijuana for Petitioner when they were stopped and arrested by Illinois State Police.  Ruffin did not testify at Petitioner's trial.  The Court denied Petitioner's request for a missing witness charge as to Ruffin, but permitted defense counsel to argue the inference. *U.S. v. Gaskin*, 364 F.3d at 463.

On October 4, 2001, the jury found Petitioner guilty of Counts 1, 2 and 6, and acquitted him of Counts 3, 4, 5 and 7.  On January 8, 2002, Petitioner appeared before the Court for sentencing.  At sentencing, the Court began by noting that Petitioner's base offense level under the Sentencing Guidelines was 26, with a Criminal History Category of I.  The Court then applied the following enhancements to Petitioner's offense level: 1) a two-point enhancement for possessing a firearm in connection with drug trafficking, pursuant to Guideline § 2D1.1(b)(1);  2) a four-point enhancement for being an organizer and leader of criminal activity, pursuant to Guideline § 3B1.1(a); 3) a two-point enhancement for using a minor (Petitioner's son) to commit a crime, pursuant to Guideline § 3B1.4; and 4) a two-point enhancement for obstructing justice (threatening to kill witnesses), pursuant to Guideline § 3C1.1.  Accordingly, the Court determined that Petitioner's offense level was 36, which resulted in a sentencing imprisonment range of 188 to 235 months.  The Court sentenced Petitioner to a term of imprisonment of 204 months (17 years), a five year term of supervised release, a $20,000 fine, and a $300 special assessment.  Petitioner did not make any Sixth Amendment objection to the Court's compulsory application of the Sentencing Guidelines.

7

Notably, at sentencing Petitioner maintained his innocence, and asserted that all of the government's witnesses had lied.  More specifically, Petitioner stated that "[d]uring the court proceedings [he] felt confident that justice [would] prevail and [that he would] be exonerated of all charges and be allowed to return home to [his] family," but that, "[t]o [his] surprise, a jury of [his] peers returned a guilty verdict." (Government's Response, Exhibit 4, p. 20).

Petitioner, represented by new counsel, appealed to the United States Court of Appeals for the Second Circuit.  The issues raised on appeal, as described by the Second Circuit, were as follows:

> Defendants assert that the trial evidence was insufficient to support their convictions and that the district court erred in failing to declare a mistrial based on jury misconduct. In addition, Gaskin argues that the district court erred in refusing to dismiss the indictment against him for violation of the Speedy Trial Act's thirty-day filing requirement, see 18 U.S.C. § 3161(b); refusing to suppress evidence seized in a warrantless search of his car; declining to give a missing witness charge; ordering forfeiture of money seized at his arrest; and increasing his Sentencing Guidelines base offense level for use of a minor in the commission of a crime, see U.S.S.G. § 3B1.4, obstruction of justice, see id. § 3C1.1, possession of a firearm in connection with a drug trafficking offense, see id. § 2D1.1(b)(1), and involvement as an organizer or leader of criminal activity involving five or more participants, see id. § 3B1.1(a).

*U.S. v. Gaskin*, 364 F.3d at 445.  The Second Circuit rejected all of those arguments and affirmed Petitioner's judgment of conviction.  Petitioner petitioned the U.S. Supreme Court for a Writ of Certiorari, however, on April 18, 2005 that application was denied.

On April 21, 2006, Petitioner commenced the subject proceeding.  Petitioner

essentially raises three arguments: 1) trial counsel provided ineffective assistance; 2) appellate counsel provided ineffective assistance; and 3) the sentencing violated his Sixth Amendment rights.   The Court will examine each of these claims below.

DISCUSSION

*Effectiveness of Trial Counsel*

To establish ineffective assistance of counsel, petitioner must meet two requirements:

> First, he must demonstrate that his attorney's performance 'fell below an objective standard of reasonableness' under the 'prevailing professional norms.' *Strickland v. Washington*, 466 U.S. 668, 688 (1984). Second, he must show a 'reasonable probability' that absent counsel's error, the outcome of the proceeding would have been different. *Id*. at 687-88.

*Vadas v. U.S.*, 527 F.3d 16, 20 (2d Cir. 2007) (footnote omitted).   When applying the first *Strickland* prong, courts must be

> mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts. To give appropriate deference to counsel's independent decisionmaking, we "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Another familiar risk is that, in the illuminating light of hindsight, we might look back and project ex post knowledge of consequences on the attorney's ex ante selection of one path among the many available to him. To counteract this inclination to evaluate counsel's performance against insight gained only through the passage of time, *Strickland* requires that "[w]hen assessing whether or not counsel's performance 'fell below an objective standard of reasonableness … under prevailing professional norms,' " we must "consider the circumstances counsel faced at the time of the relevant conduct and … evaluate the conduct from counsel's point of view." [*Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (*quoting Strickland*, 466 U.S. at 688-89, 104 S.Ct. 2052) (first ellipsis in original).

9

*Parisi v. U.S.*, 529 F.3d 134, 141 (2d Cir. 2008).  Consequently, an attorney is not ineffective for failing to anticipate a change in the law, unless such failure was objectively unreasonable. *See, Id.* ("Under *Strickland*, we must consider the circumstances counsel faced at the time of the relevant conduct, and [Petitioner] has not persuaded us that his attorney erred in not anticipating such a development in the law.") (citation omitted).

With regard to a claim of ineffectiveness involving a plea bargain,

[t]he Court of Appeals for the Second Circuit has explained that a criminal defense lawyer must always convey the terms of a plea offer to a defendant; failure to do so is in effect a per se violation of the first prong of *Strickland*:

> We recently considered whether defense counsel renders ineffective assistance when he fails to give his client any advice as to the acceptance of a plea bargain offered by the prosecution. *See Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir.1996).... In that case, the defendant had proclaimed his innocence to his lawyer, the prosecution had offered a plea bargain with a sentence of one to three years, and, without the plea bargain, the defendant faced sentencing for a Class A-I felony for which the minimum term of imprisonment is 15 to 25 years and the maximum term is life.... We ruled that failure to give any advice concerning acceptance of the plea bargain was below the standard of reasonable representation.

> *Boria* recognizes a lawyer's general duty to advise a defendant concerning acceptance of a plea bargain. A defense lawyer in a criminal case has the duty to advise his client fully on whether a particular plea to a charge appears to be desirable. Even if there might be circumstances where defense counsel need not render advice as to acceptance of a plea bargain, there can be no doubt that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution. In this case, the failure

10

> to do so was aggravated by the absence of any advice
> concerning the plea bargain and the significantly inaccurate
> calculation of sentencing ranges upon a plea and upon
> conviction after trial.
>
> *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir.1999) (emphasis
> added; some citations and footnote omitted).
>
> As to *Strickland*'s prejudice requirement vis-á-vis plea offers, a habeas
> petitioner may be prejudiced if he or she would have accepted the
> un-conveyed plea offer which was significantly lower than the actual
> sentence.  *Pham v. United States*, 317 F.3d 178, 182 (2d Cir.2003)
> (sentencing disparity of at least 113 months and petitioner's statement
> that he would have accepted the offer is sufficient to support prejudice
> finding).

*Goldberg v. Tracy*, 247 F.R.D. 360, 396-97 (E.D.N.Y. 2008) (other citations omitted).

In this case, Petitioner first contends that trial counsel provided ineffective assistance with regard to a possible plea bargain.  Specifically, Petitioner alleges that counsel failed to properly assess the strength of the Government's case, and that if he had, he would have advised Petitioner to plead guilty and avoid a trial.  Petitioner also claims, in that regard, that he was not aware that he could receive a sentence of seventeen years in prison if convicted.  Additionally, Petitioner alleges that the Government probably made him a plea offer, and that defense counsel was ineffective for failing to convey such an offer.  However, the Court finds that defense counsel conveyed the plea offer in this case to Petitioner.  On this point, the Court credits Mr. Rothenberg's assertion that it was his usual practice to convey plea offers to his clients.  *See, Crisci v. United States*, No. 03-2993, 108 Fed.Appx. 25, 2004 WL 1932638 at *2 (2d Cir. Aug. 31, 2004) ("Given [defense counsel's] sworn affidavit

stating his practice of informing 'every client' about the sentencing guidelines ranges that he faces, we do not find that the District Court erred in drawing its conclusion without a hearing."). This finding is further supported by Mr. Rothenberg's notes, which indicate that he discussed a plea offer with Petitioner on two occasions, and by the statements of counsel, made in open court and in Petitioner's presence, which indicated that attempts to reach a plea agreement had been unsuccessful.

However, even if defense counsel failed to convey such offer, as Petitioner maintains, thereby establishing the first *Strickland* prong, Petitioner cannot demonstrate prejudice. That is, he has not demonstrated a "reasonable probability" that but for counsel's errors, the result of the proceeding would have been different. First, it appears unlikely that Petitioner would have accepted the plea offer, since he has maintained throughout this case, including at sentencing, that he is completely innocent.[3] In any event, Petitioner has not indicated that he would have accepted the plea bargain, which consisted only of an offer to drop the gun charge in exchange for a plea to the drug charges. Instead, Petitioner states: "Had Petitioner been apprised of any offers – even with minimal recommendations for reductions, such as 3 points for acceptance of responsibility and a recommendation that Petitioner be sentenced at the low end of the guidelines, Petitioner would have accepted the offer."(§ 2255

---

[3]Of course, a defendant's protestation of innocence is "a factor relevant to [a] conclusion as to whether he has shown a reasonable probability that he would have pled guilty," but "is not dispositive." *Cullen v. U.S.*, 194 F.3d 401, 407 (2d Cir. 1999). Moreover, "where the disparity in potential sentences is great, a finder of fact may infer that defendants who profess their innocence will still consider a plea." *Pham v. United States*, 317 F.3d at 183. However, as discussed further below, the Court finds that the sentencing disparity in this case does not create such an inference.

Motion [#135] at 8).  Since the subject plea offer did not involve the government making any sentencing recommendations, Petitioner's statement is merely speculative. Further, even assuming that he had pled guilty it is not clear that he would have received a three-point reduction for acceptance of responsibility. *See, Ferreira v. U.S.*, No. 98 Civ. 4698(JFK), 1999 WL 558145 at *2 (S.D.N.Y. Jul. 30, 1999) ("Petitioner cannot establish that she would have received such an adjustment. The commentary to U.S.S.G. § 3E1.1, which pertains to acceptance of responsibility provides that "a defendant who enters a guilty plea is not entitled to an adjustment as a matter of right." See U.S.S.G. § 3E1.1, commentary n. 3.").  Assuming that Petitioner would not have received such a reduction, then he clearly suffered no prejudice from going to trial, since he was acquitted of the gun charge.  However, even assuming that Petitioner would have received a three-point reduction for acceptance of responsibility by pleading guilty, such fact would not establish prejudice.  With a three-point reduction for acceptance of responsibility, resulting in an offense level of 33 and a criminal history category I, the sentencing range would have been 135 to 168 months. (Maximum of 14 years).  The Court sentenced Petitioner to 204 months (17 years), which is only three more years than he could have received even with a three-point reduction.  In the instant case the Court finds that such a disparity, while not insignificant, does not establish prejudice under *Strickland*. *See, Dedushaj v. Graham*, No. 07 Civ. 5401(JGK), 2008 WL 4858242 at *6, n. 2 (S.D.N.Y. Nov. 7, 2008) ("[T]he sentencing disparity in this case-the difference between the three years offered

13

in the plea and the five years to which the petitioner was sentenced-was relatively minor."); *Carbajal v. U.S.*, No. 99 Civ.1916(MGC), 2004 WL 2283658 at *5 (S.D.N.Y. Oct. 8, 2004) ("The difference a reduction of two years would make to a sentence of fifteen years is not significant. . . .  Courts which have treated sentence disparities as objective evidence of prejudice in similar situations have consistently required much greater discrepancies.") (citations omitted); *Mask v. McGinnis*, 233 F.3d 132, 141-42 (2d Cir. 2000) (Prejudice established based on disparity of sentence and Petitioner's statement that he would have accepted plea offer, where Petitioner received sentence after trial of 20 to 40 years, and could have received sentence of 8 to 16 years by pleading guilty.).

Petitioner also alleges that trial counsel was ineffective for declining to interview Ron Ruffin prior to trial. [4]  In that regard, Petitioner speculates that Ruffin might have provided exculpatory testimony, since the Government did not call him as a witness at trial: "The lack of interest on the part of the government to call Mr. Ruffin should have alerted counsel that Mr. Ruffin might have been able to provide testimony that could have contradicted the testimony of Ms. Gahr or could have otherwise been exculpatory."[5] ( § 2255 Petition at 9).  However, "[t]he decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to

---

[4]Petitioner describes Ruffin as "an alleged, uncharged co-conspirator." Petitioner's Memo of Law at 8.

[5]Petitioner's insistence that Ruffin could have provided exculpatory testimony is consistent with his claims of innocence, and supports the Court's view that he had no intention of pleading guilty.

second-guess." *U.S. v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998); *see also, U. S. ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974) ("[T]he decision to call or bypass particular witnesses is peculiarly a question of trial strategy, which courts will practically never second-guess.") (citations and footnote omitted).  As already mentioned, Ruffin was caught transporting more than two-hundred pounds of marijuana for Petitioner, and Ruffin's wife, Bonnie Gahr, was one of the key prosecution witnesses.  It is therefore highly improbable that Ruffin would have provided testimony that was helpful to Petitioner's case.  Petitioner's belief that Ruffin might have provided helpful testimony is unrealistic.  Accordingly, Petitioner's claim that counsel was ineffective for failing to interview Ruffin lacks merit.

*Effectiveness of Appellate Counsel*

With regard to alleged ineffective assistance of appellate counsel, it is well settled that,

> [i]n attempting to demonstrate that appellate counsel's failure to raise a . . . claim constitutes deficient performance, it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made. *See Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 3314, 77 L.Ed.2d 987 (1983). However, a petitioner may establish constitutionally inadequate performance if he shows that counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker. As the Seventh Circuit has held: 'When a claim of ineffective assistance of counsel is based on failure to raise viable issues, the district court must examine the trial court record to determine whether appellate counsel failed to present significant and obvious issues on appeal. Significant issues which could have been raised should then be compared to those which were raised. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective

assistance of counsel be overcome.' *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir.1985).

*Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (some citations omitted).   Here, Petitioner alleges that his appellate counsel was ineffective because, although he was aware that the U.S. Supreme Court had granted a writ of certiorari in *Blakely v. Washington*, he failed to raise any argument under *Blakely*.   Petitioner further contends that he was prejudiced by counsel's alleged error, since such an argument might have resulted in the elimination of his sentencing enhancements. (Petitioner's Memo of Law at 13) ("Petitioner was prejudiced by counsel's failure to preserve this argument because there is a 'reasonable probability' that, had counsel preserved the argument, the enhancements would have been removed.").   At the outset, it is clear that appellate counsel had no basis to raise a claim under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348 (2000), since Petitioner's sentence did not exceed the maximum statutory sentence.   Instead, as already discussed, Petitioner contends that the Court's application of the sentencing guidelines, with factual findings made by the Court using a preponderance-of-evidence standard, violated his Sixth Amendment rights, and that his appellate counsel should have anticipated the ruling in *Blakely*, based on the petition for writ of certiorari in that case.   However, even after *Blakely*, and until the Supreme Court's decision in *U.S. v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (Jan. 12, 2005), it remained the law of this Circuit that such enhancements under the sentencing guidelines were constitutional. *See, United States v. Mincey*, 380 F.3d 102, 106 (2d Cir. Aug. 12, 2004) ("The pending issue for us is whether we should

now abandon the prevailing law of this Circuit because of arguments based on what the *Blakely* decision might portend for the future of the Guidelines sentencing.  We conclude that we should not.").

The Second Circuit's holding in *Mincey* points out the mistaken factual premise upon which Petitioner's claim is based.  Specifically, regarding the grant of certiorari in *Blakely*, Petitioner alleges: "The fact that the U.S. Supreme Court had agreed to hear arguments regarding whether or not the rule of <u>Apprendi v. New Jersey</u>, which requires that factual determinations which affect sentences must be made by jury [sic], [applies] *to the Federal Sentencing Guidelines*, put counsel on notice that such claims could be meritorious." (Petitioner's Memo of Law at 12-13) (emphasis added).  However, the petition for writ of certiorari in *Blakely* did not ask the Supreme Court to address whether *Apprendi* applied to the Federal Sentencing Guidelines.  To the contrary, the petition for writ of certiorari expressly stated that, "a decision from this Court prohibiting upward departure systems such as Washington's would *not* invalidate the federal sentencing guidelines, or even states' sentencing guidelines." *Blakely Writ of Certiorari*, 2003 WL 22427993 at *16-17 (May 5, 2003) (Emphasis added).  Moreover, "the Supreme Court explicitly stated in *Blakely* that '[t]he Federal Guidelines are not before us, and we express no opinion on them." *U.S. v. Mincey*, 380 F.3d at 106 (citation omitted).  Accordingly, appellate counsel was not ineffective for failing to make a Sixth Amendment argument, based on the grant of certiorari in *Blakely*.

17

Nor was it objectively unreasonable for appellate counsel to fail to anticipate the ruling in *Booker* at the time he was preparing Petitioner's appeal. *See, Guzman v. United States*, 404 F.3d 139, 142 (2d Cir. 2005) ("[T]he result in *Booker* was not dictated by *Apprendi* or, for that matter, the Court's later decision in *Blakely v. Washington*[.]").  In that regard, numerous courts have held that appellate counsel was not ineffective for failing to anticipate the ruling in *Booker*. *See*, *Pena v. United States*, No. 04CIV9700AJP, 00CR36RMB, 2005 WL 1176073 at *6-7 (S.D.N.Y. May 18, 2005) (Appellate counsel was not ineffective for failing to file supplemental brief, raising *Blakely* claim, after petition for certiorari was filed in *Blakely*.) (collecting cases), *aff'd* 534 F.3d 92 (2d Cir. 2008), *cert den.*, 129 S.Ct. 424 (2008); *United States v. Dean*, No. 2:98 CR 63, 2006 WL 2786763 at *5 (D.Vt. Sep. 26, 2006) ("The prevailing view among district courts in this circuit is that the failure to anticipate *Blakely* and *Booker* - and thus to argue the unconstitutionality of the United States Sentencing Guidelines at sentencing or on appeal - did not constitute ineffective assistance of counsel....") (*quoting Bretan v. United States*, 2006 WL 238994 at *6 (S.D.N.Y. Jan. 31, 2006) (other citation omitted).

Finally, Petitioner contends that appellate counsel was ineffective for allegedly failing to obtain transcripts of opening statements, jury instructions and closing arguments.  In that regard, Petitioner states only that, "[a]ny appellate attorney knows that open [sic] and closing arguments and, especially, jury instructions are critical parts of the judicial process.  They must be examined in order to ascertain whether or not

reversible error was committed." (Petitioner's Memo of Law at 15).  However, this claim fails since, even assuming *arguendo* that it was unreasonable for appellate counsel not to have obtained such transcripts, Petitioner has not demonstrated any prejudice. *See, Devore v. Baldwin*, 66 Fed.Appx. 107 at *2 (9th Cir. Apr. 23, 2003) ("Even assuming his appellate counsel was deficient in failing to obtain a full trial transcript, Devore has made no argument that such a failure prejudiced him, nor is any prejudice apparent from the record before us.  We therefore reject Devore's claim of ineffective assistance on the merits.") (Unpublished); *Winslow v. Murray*, 836 F.2d 548 (4th Cir. 1987) (Table, Unpublished) ("Winslow has not shown that he was prejudiced due to his appellate attorney's failure to obtain the transcripts of voir dire and the attorneys' arguments.").  Accordingly, the Court finds that the claim of ineffective assistance of appellate counsel lacks merit.

*Sixth Amendment Violation*

Lastly, Petitioner raises a Sixth Amendment claim, which the Court construes as being a demand for re-sentencing pursuant to *Booker*.[6]  In that regard, Petitioner requests that he be re-sentenced, since his conviction did not become final until after the Supreme Court's decision in *Booker* on January 12, 2005.  Specifically,

---

[6]Petitioner argues that any Sixth Amendment violation resulting from the court's application of sentencing enhancements is necessarily "structural error" that requires re-sentencing.  However, the Supreme Court rejected that argument in *Washington v. Recuenco*, 548 U.S. 212, 222, 126 S.Ct. 2546, 2553 (2006) ("Failure to submit a sentencing factor to the jury, like failure to submit an element to the jury, is not structural error."); *see also, U.S. V. Ferrell*, 485 F.3d 687, 689 (2d Cir. 2007) ("Ferrell next contends that because all *Booker* errors are structural, the district court erred when it did not resentence him. But this court has expressly held that such errors are not structural, as have various other circuits.") (citations omitted).

Petitioner's conviction became final on April 18, 2005, when the U.S. Supreme Court denied his petition for Writ of Certiorari. *See, Burrell v. U.S.*, 467 F.3d 160, 161 (2d Cir. 2006) ("Burrell's conviction therefore became final for purposes of direct review either when the Supreme Court denied his untimely petition for a writ of certiorari or when the time for filing such a petition expired."). Therefore, Petitioner is entitled to retroactive application of *Booker* to his sentence. *See, Guzman v. U.S.*, 404 F.3d at 144 (Holding that *Booker* applies to cases on collateral review where the defendant's conviction became final after January 12, 2005). In that regard, since Petitioner did not preserve an objection at sentencing, the Court will conduct a hearing pursuant to *U.S. v. Crosby*, 397 F.3d 103 (2d Cir. 2005).[7]

## CONCLUSION

Accordingly, Petitioner's application is granted in part and denied in part. The application is granted to the extent that the Court will, by separate order, schedule a hearing pursuant to *U.S. v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Otherwise, the application is denied. Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of

---

[7]*See, U.S. v. Cuevas*, 496 F.3d 256, 265-66 (2d Cir. 2007) ("In *United States v. Crosby*, this Circuit's first decision applying *Booker*, we held that where a defendant raises a Sixth Amendment challenge to his sentence on appeal that he did not preserve below, *Booker* requires that we remand the case for the district court to consider whether it would have imposed a nontrivially different sentence had it appreciated that the Guidelines were advisory and considered all of the factors listed under 18 U.S.C. § 3553(a). *See Crosby*, 397 F.3d at 119-20. The purpose of a *Crosby* remand is to ascertain whether the district court's pre-*Booker* mandatory application of the Guidelines was plain error. The plain error analysis is satisfied if, on remand, the district judge determines 'that the original sentence would have differed in a nontrivial manner from that imposed.' *Id.* at 118. If, on the other hand, the district judge decides, 'in full compliance with now applicable requirements, that under the post-*Booker* … regime the sentence would have been essentially the same as originally imposed,' any Sixth Amendment error is harmless. *Id.*")

appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.

So Ordered.

Dated:          Rochester, New York
                December 12, 2008

                                        ENTER:



                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge